1

HONORABLE RONALD B. LEIGHTON

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

9

MARKO HOFSCHNEIDER,                          CASE NO. 3:15-cv-05903-RBL

Plaintiff,                          ORDER ON DEFENDANTS'
                                             MOTION ON THE PLEADINGS
10

11                v.                         DKT. #10

12   CITY OF VANCOUVER, EVERGREEN
     SCHOOL DISTRICT, MICHAEL
     MELOY, and BRIAN SCHAFFER,

13

Defendants.
14

15          THIS MATTER is before the Court on the Defendants' Motion for Judgment on the

16   Pleadings [Dkt. #10].

17          Plaintiff Marko Hofschneider has high-functioning autism, anxiety, and severe Tourette's

18   syndrome. In December 2012, when Hofschneider was 16 years old, he got into an argument

19   with his mother when she was dropping him off at Mountain View High School in Vancouver.

20   Fearful that he would get in trouble if she left, Hofschneider pushed his mother against a wall.

21   School staff saw the incident and intervened, placing Hofschneider in an empty office. They

22   called Defendant Brian Schaffer, a City of Vancouver police officer who was assigned to work

23   as the school's resource officer, for assistance. Schaffer searched and handcuffed Hofschneider

24

1  in the office, and then left him to further investigate. Schaffer allegedly told Mrs. Hofschneider

2  that her son was going to jail and refused to speak to Hofschneider's father (by phone) or school

3  staff who could explain his disabilities. The school's speech pathologist eventually intervened,

4  explaining Hofschneider's disabilities to Schaffer and advising that he would not do well in jail.

5  Schaffer released Hofschneider without taking him to jail.

6      Hofschneider sued Schaffer, the school's principal (Michael Meloy), the City of

7  Vancouver (Schaffer's employer), and the Evergreen School District (Meloy's employer),

8  asserting claims under 42 U.S.C. § 1983 (for violation of his Fourth Amendment rights), Title II

9  of the Americans with Disabilities Act, and Section 504 of the Rehabilitation Act. He does not

10  clearly articulate which claims are asserted against which Defendant, but, as the Defendants

11  point out, not all of the claims can be asserted against all of the Defendants.

12      The Defendants argue the majority of Hofschneider's claims are fatally flawed, and urge

13  dismissal without leave to amend, claiming any modifications would be inconsistent with his

14  existing allegations.[1] Schaffer and Meloy seek dismissal of the ADA and Rehabilitation Act

15  claims, arguing that because each is sued in his official—rather than individual—capacity, any

16  claim against them is redundant since Hofschneider is already suing their employers on those

17  claims. Their employers, the City and the District, respectively, argue that Hofschneider's § 1983

18  (*Monell*) claims are flawed because he has not pled, and cannot plausibly plead, any City or

19  District policy or practice was the moving force behind any constitutional violation.

20      Schaffer contends he did not violate Hofschneider's Fourth Amendment rights because

21  he had probable cause to detain him after he pushed his mother against the wall. Schaffer also

---

23      [1] The City and the District do not seek dismissal of Hofschneider's ADA and

24  Rehabilitation Act claims. These claims may proceed as pleaded.

1  argues that his search and seizure of Hofschneider was conducted reasonably, and that, even if it

2  was not, he is entitled to qualified immunity because any right he did violate was not "clearly

3  established." Meloy argues that Hofschneider has not pled, and cannot plausibly plead, a § 1983

4  claim against him because Meloy was not involved in this incident in any way. Indeed,

5  Hofschneider makes only a single factual allegation about Meloy—that, after the incident, Meloy

6  suggested Hofschneider transfer to a different school.

7       Hofschneider argues that his ADA and Rehabilitation Act claims against Schaffer and

8  Meloy should not be dismissed because they are sued in their official capacities, although he

9  does not address the Defendants' redundancy argument. Hofschneider also, curiously, maintains

10  that he plausibly pled Fourth Amendment claims against the City and the District because he

11  sued Schaffer and Meloy in their official capacities.

12       He argues that Schaffer's search was unconstitutional because he was not acting violently

13  or threateningly at the time he was detained. He argues that, as his claims are pled, Schaffer is

14  not entitled to qualified immunity because he did not act as a "reasonably prudent officer" when

15  he handcuffed Hofschneider. Hofschneider contends that he has plausibly pled that Meloy was

16  the school's policy-maker and that he had authority over the manner in which on-campus harm

17  situations were handled by staff, although none of that is included in his Complaint. He similarly

18  does not explicitly allege Meloy implemented an unconstitutional policy, but instead argues

19  Meloy's alleged authority to do so supports a Fourth Amendment claim against him despite his

20  lack of personal participation. Finally, he seeks leave to amend if the Court concludes that any of

21  his claims are deficient.

22

23

24

1

**DISCUSSION**

2

**A.      Standard of Review.**

3          The standard applicable to a 12(c) motion for judgment on the pleadings mirrors that of a

4   12(b)(6) motion to dismiss. *See Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc.*, 896

5   F.2d 1542, 1550 (9th Cir. 1989). Dismissal under Rule 12(b)(6) may be based on either the lack

6   of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal

7   theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A plaintiff's

8   complaint must allege facts to state a claim for relief that is plausible on its face. *See Ashcroft v.*

9   *Iqbal*, 556 U.S. 662, 678 (2009). A claim has "facial plausibility" when the party seeking relief

10  "pleads factual content that allows the court to draw the reasonable inference that the defendant

11  is liable for the misconduct alleged." *Id.*

12         Although the Court must accept as true the complaint's well-pled facts, conclusory

13  allegations of law and unwarranted inferences will not defeat a Rule 12(c) motion. *See Vazquez*

14  *v. L.A. County*, 487 F.3d 1246, 1249 (9th Cir. 2007). "[A] plaintiff's obligation to provide the

15  'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a

16  formulaic recitation of the elements of a cause of action will not do. Factual allegations must be

17  enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550

18  U.S. 544, 555 (2007) (citations and footnotes omitted). This requires a plaintiff to plead "more

19  than an unadorned, the-defendant-unlawfully-harmed-me-accusation." *Ashcroft*, 556 U.S. at 678

20  (citing *Twombly*). The Court must construe all allegations in the light most favorable to the

21  nonmoving party. *See Bagley v. CMC Real Estate Corp.*, 923 F.2d 758, 760 (9th Cir. 1991).

22         The court should freely give leave to amend when justice so requires. Fed. R. Civ. P.

23  15(a)(2). A motion for leave to amend may be denied if it appears to be futile or legally

24

1  insufficient. *Miller v. Rykoff-Sexton, Inc*., 845 F.2d 209, 214 (9th Cir. 1988). A proposed

2  amendment is futile only if no set of facts can be proved under the amendment to the pleadings

3  that would constitute a valid and sufficient claim or defense. *Id.* Leave to amend is not warranted

4  if the complaint's deficiencies can only be cured by allegations that contradict or are inconsistent

5  with the challenged pleading. *See United States v. Corinthian Colleges*, 655 F.3d 984, 995 (9th

6  Cir. 2011).

7  **B.   "Official Capacity" Claims.**

8         As an initial matter, it appears that Hofschneider sued Schaffer and Meloy in their

9  "official capacities" based on a misapprehension about the effects and benefits of doing so.

10  Hofschneider concedes that any ADA or Rehabilitation Act violations by Schaffer or Meloy

11  cannot lead to individual liability, but argues that his "official capacity" claims survive because

12  such claims are in fact asserted against the state or entity—which *can* be liable under these

13  statutes—and not the individual.

14         But, the City and the District are already defendants on these claims. Hofschneider's

15  official capacity ADA and Rehabilitation Act claims against Schaffer and Meloy are therefore

16  redundant:

17         [W]hen both a municipal officer and a local government entity are named, and the
           officer is named only in an official capacity, the court may dismiss the officer as a
18         redundant defendant.

19  *Center for Bio-Ethical Reform, Inc.. v. Los Angeles Cty. Sheriff's Dep't*, 533 F.3d 780, 799 (9th

20  Cir. 2008). This is true even if there was a question as to whether these "official capacity" claims

21  would be viable if the entities were not also defendants. These claims are therefore DISMISSED

22  with prejudice.

23

24

1    Hofschneider also contends that qualified immunity is not a defense to his "official

2   capacity" § 1983 claims against Schaffer and Meloy.[2] But this is because such claims are, again,

3   not proper in the first place. A municipality is liable for constitutional violations only where its

4   own policy, custom, or practice is the "moving force" behind the violation. *See Monell v. Dep't*

5   *of Soc. Servs. Of City of New York,* 436 U.S. 658, 690–91 (1978). There is no authority for the

6   notion that a municipality can be liable simply because its employee is named in his official

7   capacity.

8    § 1983 provides a remedy for the violation of a person's constitutionally-protected rights

9   "by any *person* acting under color of state law." *See id.* (emphasis added). The employee actor—

10   the *person*—who causes a constitutional violation is individually liable to the plaintiff under

11   § 1983. But there is no *respondeat superior* liability under § 1983; a municipality is not liable

12   simply because it employs a tortfeasor. *Id.* at 691.

13    Therefore, in order to plausibly assert a claim against a municipality under *Monell*, a

14   plaintiff must allege (1) that a municipality employee violated a constitutional right; (2) that the

15   municipality has customs or policies that amount to deliberate indifference of that right; and (3)

16   those customs or policies were the "moving force" behind the constitutional right violation. *See*

17   *Board of County Com'rs v. Brown*, 520 U.S. 397, 404 (1997). In other words, a municipality can

18   be a "person" for § 1983 purposes where its own policies or practices caused a constitutional

19   violation. Naming the underlying constitutional violator in his "official capacity" is neither

20   sufficient nor necessary to impose municipal liability. Hofschneider's "official capacity" Fourth

21

22    [2] The viability of Hofschneider's claims against Meloy is discussed below. But it is clear

23   that Schaffer was not a District employee, and it is not plausible that some policy made or
enforced by Meloy was the moving force behind any constitutional violation caused by

24   Schaffer's treatment of Hofschneider.

Amendment claims against Shaffer and Meloy are not plausible and they are DISMISSED with prejudice without leave to amend.

For the same reasons, Hofschneider's Fourth Amendment claims against the City and the District are flawed. They are based only on his naming the employees in their "official capacities," and that is not enough as a matter of law. Hofschneider has not alleged that some unconstitutional policy or practice was the moving force behind his constitutional harm. And he could not do so, at least with respect to the District; Schaffer is a police officer and he was acting as a police officer when he detained Hofschneider. Hofschneider cannot plausibly plead that Schaffer acted pursuant to any District policy. Accordingly, his Fourth Amendment claim against the District is DISMISSED with prejudice, and without leave to amend.

Hofschneider has not even hinted at an unconstitutional policy or custom by the City that was the moving force behind his alleged constitutional deprivation. Despite this, it is not inconceivable that Hofschneider could do so with respect to Schaffer's conduct in order to state a valid *Monell* claim. His request for leave to amend his § 1983 claim against the City is therefore GRANTED.

**C.     Fourth Amendment Claim Against Schaffer.**

Schaffer argues that he did not violate Hofschneider's Fourth Amendment rights and that, even if he did, he is entitled to qualified immunity. He claims he had probable cause to believe Hofschneider committed fourth degree assault-domestic violence after he pushed his mother against the wall. He argues that, with probable cause, his search and seizure of Hofschneider—including the handcuffing and brief detention—was both constitutional and mandatory under state law. He also asserts that even if Hofschneider's disabilities could provide an affirmative defense to any assault charge brought against him, his seizure was constitutionally permissible

1 | because law enforcement need not evaluate the validity of every possible defense before

2 | detaining a suspected offender.

3 | Hofschneider argues he has plausibly pled that Schaffer acted unreasonably while

4 | detaining him, casting doubt upon whether he is entitled to qualified immunity. He alleges that

5 | Schaffer did not need to search or handcuff him because he was not acting violently and was

6 | already separated from his mother.

7 | **1.    Fourth Amendment Challenge to the Fact of his Detention.**

8 | To state a claim under 42 U.S.C. § 1983, a plaintiff must allege (1) a violation of the

9 | rights secured by the Constitution and laws of the United States, and that (2) the deprivation was

10 | committed by a person acting under color of state law. *See Parratt v. Taylor*, 451 U.S. 527, 535

11 | (1981).

12 | Qualified immunity "shields an officer from suit when she makes a decision that, even if

13 | constitutionally deficient, reasonably misapprehends the law governing the circumstances she

14 | confronted." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004). The Supreme Court has endorsed a

15 | two-part test to resolve claims of qualified immunity: a court must decide (1) whether the facts

16 | that a plaintiff has alleged "make out a violation of a constitutional right," and (2) whether the

17 | "right at issue was 'clearly established' at the time of the defendant's alleged misconduct."

18 | *Pearson v. Callahan*, 555 U.S. 223, 232 (2009).[3] Qualified immunity protects officers not just

19 | from liability, but from suit; thus, the claim should be resolved "at the earliest possible stage in

20 | litigation." *See Anderson v. Creighton*, 483 U.S. 635, 646 n.6 (1987). The purpose of qualified

21 | immunity is "to recognize that holding officials liable for reasonable mistakes might

22 |

23 |

24 | [3] In *Pearson*, the Supreme Court reversed its previous mandate from *Saucier* requiring district courts to decide each question in order. *See Pearson,* 555 U.S. at 233 (2009).

1    unnecessarily paralyze their ability to make difficult decisions in challenging situations, thus

2    disrupting the effective performance of their public duties." *Mueller v. Auker*, 576 F.3d 979, 993

3    (9th Cir. 2009). Because "it is inevitable that law enforcement officials will in some cases

4    reasonably but mistakenly conclude that probable cause [to arrest] is present," qualified

5    immunity protects officials "who act in ways they reasonably believe to be lawful." *Garcia v.*

6    *County of Merced*, 639 F.3d 1206, 1208 (9th Cir. 2011) (quoting *Anderson*, 483 U.S. at 631).

7    Qualified immunity "gives ample room for mistaken judgments" and protects "all but the plainly

8    incompetent." *Hunter v. Bryant*, 502 U.S. 224, 229 (1991).

9         The Constitution permits an officer to arrest a suspect without a warrant if there is

10   probable cause to believe that the suspect has committed or is committing an offense. *Michigan*

11   *v. DeFillippo*, 443 U.S. 31, 36 (1979). The ultimate conclusion of whether probable cause exists

12   is a mixed question of law and fact. *United States v. Merriweather,* 777 F.2d 503, 505 (9th Cir.

13   1985). The validity of the arrest does not depend on whether the suspect actually committed a

14   crime; an arrest is justified when the facts and circumstances within an officer's knowledge are

15   sufficient to warrant a prudent person's belief that the suspect has committed, is committing, or

16   is about to commit an offense. *See DeFillippo*, 443 U.S. at 36–37. The Court considers whether

17   the officer's actions are "objectively reasonable" in light of the facts and circumstances

18   confronting them, without regard to their underlying intent or motivation. *See Graham v.*

19   *Connor*, 490 U.S. 386, 397 (1989).

20        Fourth degree assault is essentially an assault with little or no bodily harm, committed

21   without a deadly weapon—a so-called simple assault. *See* RCW 9A.36.041(1); *see also State v.*

22   *Hahn*, 174 Wn.2d 126, 271 P.3d 892, 893 (2012). In Washington, an assault is an intentional

23   touching, striking, cutting, or shooting of another person, with unlawful force, that is harmful or

24

1    offensive regardless of whether any physical injury is done to the person. *State v. Smith*, 159

2    Wn.2d 778, 154 P.3d 873, 875 (2007). Assault in the fourth degree is a gross misdemeanor

3    offense. RCW 9A.36.041(2). Any officer having probable cause to believe that a person has

4    committed a gross misdemeanor involving physical harm or threats of harm to any person shall

5    have the authority to arrest the person. RCW 10.31.100(1). An officer also "shall" arrest a

6    person, sixteen years or older, when he has probable cause to believe that the person (within the

7    preceding four hours) assaulted a family or household member that "resulted in bodily injury to

8    the victim, whether the injury is observable by the responding officer or not." RCW

9    10.31.100(2)(c). Bodily injury means physical pain, illness, or an impairment of physical

10   condition. *Id.*

11        Hofschneider concedes that he committed an offensive touching by pushing his mother

12   that could have "arguably" provided Schaffer probable cause. This touching justified Schaffer's

13   brief detention of Hofschneider; indeed, Schaffer believed Hofschneider committed a domestic

14   violence-related assault for which he would have to be arrested under RCW 10.31.100(2)(c).

15   Furthermore, even if the decision to detain Hofschneider was not reasonable, Schaffer is entitled

16   to qualified immunity—he reasonably believed probable cause existed in light of the

17   circumstances before him, and was not plainly incompetent. Hofschneider's challenge to the fact

18   of his detention under the Fourth Amendment is insufficient as a matter of law, and it cannot be

19   remedied by amendment.  The Defendants' Motion to dismiss this claim challenging the fact of

20   his detention is GRANTED, and the claim is DISMISSED with prejudice and without leave to

21   amend.

22

23

24

**2.**        **Fourth Amendment Challenge to the Manner of his Detention.**

Because Hofschneider's challenge as to the fact of his detention fails, his Fourth Amendment claim depends upon whether the manner of his detention was unreasonable. *See Franklin v. Foxworth*, 31 F.3d 873, 875 (9th Cir. 1994). Whether an otherwise valid search or seizure was carried out in an unreasonable manner is determined under an objective test. *Id.* Reasonableness is viewed from the perspective of the officer at the time the action occurred, "rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396. To determine reasonableness, one must remember "that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 396–97. Determining whether force is reasonable under the Fourth Amendment requires "a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing government interests." *Id.* at 396 (internal quotations and citations omitted).

Hofschneider does not allege anything objectively unreasonable about his detention. Although Schaffer may not have needed to handcuff Hofschneider while he investigated further, it was not unreasonable for him to do so given that he had probable cause to believe an arrestable assault occurred.

Hofschneider could, however, allege additional facts (including, perhaps, the duration of his detention) that plausibly show that the manner of his detention violated his Fourth Amendment rights. The claim as currently pled is dismissed, but Hofschneider is GRANTED leave to amend his complaint to allege additional facts showing how his detention was unreasonably conducted.

1    **D.      Fourth Amendment Claim Against Meloy.**

2           Meloy argues that Hofschneider has not identified and cannot identify any act *by Meloy*

3    that violated his constitutional rights. He claims this warrants dismissal. Hofschneider responds

4    that it is a "reasonable inference" Meloy had policy-making control over how school staff

5    handles investigations of harm on campus, which he argues is sufficient to state a claim. Meloy

6    asserts that it is the school board, not him, that is vested with policy-making authority under

7    Washington law. Furthermore, Schaffer is a City employee, and he acted as a police officer;

8    Meloy was not Schaffer's supervisor as a matter of law.

9           There is no vicarious liability under § 1983. *See Iqbal*, 556 U.S. at 675–76. Therefore, a

10   plaintiff must show that the defendants personally participated in the alleged unconstitutional

11   action. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir.1989). To be liable, a person must do an

12   affirmative act, participate in another's affirmative act, or fail to perform an act that the person is

13   legally required to do. *See Johnson v. Duffy*, 588 F.2d 740, 743–44 (9th Cir.1978). A supervisor

14   may be liable if there exists either (1) his or her personal involvement in the constitutional

15   deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and

16   the constitutional violation. *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989). Supervisory

17   liability exists even without overt personal participation in the offensive act if a supervisor

18   implements a policy so deficient that the policy "itself is a repudiation of constitutional rights"

19   and is "the moving force of the constitutional violation." *Id.* A supervisor may also be liable if he

20   knew of constitutional violations and failed to prevent them. *See Taylor*, 880 F.2d at 1045.

21          Even assuming Schaffer violated Hofschneider's Fourth Amendment rights,

22   Hofschneider does not allege that Meloy personally participated in, or knew of and failed to

23   prevent, the search and seizure. Hofschneider also does not allege Meloy promulgated a deficient

24

policy that was the moving force behind his alleged constitutional violation. Meloy cannot be held vicariously liable simply due to his position, and Hofschneider cannot rely upon "reasonable inferences" of policy-making authority alone when he has pled insufficient facts to support his legal theory.

Hofschneider cannot plausibly amend his Complaint to state a claim against Meloy in a manner consistent with his present allegations. He cannot claim Meloy was directly involved in Schaffer's conduct nor that he had knowledge of the incident and acquiesced, assuming a constitutional harm occurred. If that were true, Hofschneider most certainly would have already alleged it, either in his Complaint or Response.

While Hofschneider may allege, as his Response suggests he might, that Meloy—as principal—promulgated some policy Schaffer performed to violate his rights, a causal connection would still be lacking. Hofschneider alleges in his Complaint that despite pleas by his mother for Schaffer to speak to a school staff member familiar with his disabilities, Schaffer refused to do so. He similarly seems to allege Schaffer acted entirely on his own accord until the school's speech pathologist intervened. It is hard to imagine Meloy would have promulgated a policy directing the school's resource officer to detain a student without speaking to staff members knowledgeable about the situation and any mitigating circumstances; Meloy's alleged policy cannot be the "moving force" behind Schaffer's conduct if Schaffer himself was an independent bad actor. Hofschneider also does not allege Schaffer was a school employee, making the notion that Meloy's direction was the moving force behind Schaffer's conduct all the more implausible.[4] Finally, any claim that Meloy promulgated a policy that was the moving

---

[4] In fact, Hofschneider alleges he was only released after Schaffer "conferred with his supervisor." Although he does not state who the supervisor was, it is reasonable to believe that, if

1   force behind Schaffer's actions is further complicated by Washington law, which places policy-

2   making in the hands of school districts' board of directors and not principals. *See* RCW

3   28A.150.230(1).

4        Amendment would be futile because Hofschneider cannot plausibly allege that Meloy is

5   liable for Schaffer's conduct. His request for leave to amend is therefore DENIED, and his

6   Fourth Amendment claim against Meloy is DISMISSED with prejudice.

7   **E.     Punitive Damage Claims.**

8        All Defendants seek dismissal of Hofschneider's punitive damages claims. The City and

9   the District argue that punitive damages are not available against a municipality under § 1983,

10   the ADA, or the Rehabilitation Act. Schaffer and Meloy argue that, because they are not liable

11   on the underlying claims, there is no vehicle for punitive damages against them.

12       A municipality is immune from punitive damages under 42 U.S.C. § 1983. *City of*

13   *Newport v. Fact Concerts, Inc*., 453 U.S. 247, 271 (1981). Punitive damages are not available

14   under § 202 of the ADA and § 504 of the Rehabilitation Act. *See Barnes v. Gorman*, 536 U.S.

15   181, 189 (2002). Hofschneider's claims for punitive damages against both the City and the

16   District are therefore DISMISSED with prejudice. Moreover, because the substantive claims

17   against Meloy have been dismissed, Hofschneider's punitive damages claim against him is

18   DISMISSED with prejudice.

19       Hofschneider's current claim against Schaffer is inadequate to support punitive damages

20   because he has not pleaded a violation of his constitutional rights. He has, however, been

21

22

23   _____

24   it was Meloy, Hofschneider would have alleged it. If his supervisor was somebody else, it makes
     any allegation about Meloy's participation or direction even more attenuated.

1   partially granted leave to amend his complaint, and he likewise may do so to state a plausible

2   punitive damages claim against Schaffer if one exists.

3   **CONCLUSION**

4       Hofschneider's ADA and Rehabilitation Act claims against Schaffer and Meloy are

5   DISMISSED with prejudice. His § 1983 and punitive damages claims against Meloy and the

6   District are DISMISSED with prejudice. His punitive damages claim against the City is also

7   DISMISSED with prejudice.

8       Hofschneider's request for leave to amend his complaint is GRANTED in part: he may

9   amend his § 1983 claim against Schaffer challenging the manner of his detention and his § 1983

10  claim against the City. He may also reallege a punitive damages claim against Schaffer based on

11  his amendment if the law allows it. He should file an amended complaint addressing and

12  resolving the deficiencies described above within 30 days of this Order. The amended complaint

13  must allege specific facts showing his constitutional rights were violated. It must be consistent

14  with his existing pleadings and submitted pursuant to Rule 11. If Hofschneider does not file an

15  amended complaint within 30 days of the date of this Order, his § 1983 claims against Schaffer

16  and the City, and his punitive damages claim against Schaffer, will be dismissed.

17      IT IS SO ORDERED.

18      Dated this 21st day of April, 2016.

19

20      Ronald B. Leighton
        United States District Judge
21

22

23

24